C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
KERRILYNN BISHOP,                                              :
                                                               :  **MEMORANDUM DECISION**
                                          Plaintiff,           :  **AND ORDER**
                                                               :
              - against -                                      :  21-cv-2685 (BMC)
                                                               :
                                                               :
COMMISSIONER OF SOCIAL SECURITY,                               :
                                                               :
                                          Defendant.           :
-------------------------------------------------------------- X

**COGAN**, District Judge.

    1.    Plaintiff *pro se* seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge, that she is not disabled as defined in the Social Security Act and its regulations for the purpose of receiving disability insurance benefits. Plaintiff had asserted an onset date of December 19, 2017. The ALJ found that plaintiff has severe impairments of obesity, osteoarthritis of the right ankle, avulsion injury to the left ankle, left wrist injury with surgical repair, and major depressive disorder. However, the ALJ also found that plaintiff could perform sedentary work subject to restrictions of frequent (as opposed to constant) handling; occasional stooping and climbing of ramps and stairs; low stress work like assembly line work; and work that would allow her to use a cane.

    2.    Plaintiff has not responded to the Commissioner's motion for judgment on the pleadings despite having received the required *pro se* notice under Local Civil Rule 12.1. Nevertheless, considering her *pro se* status, I have reviewed the record to determine the strongest arguments that might be made on her behalf, focusing particularly on her residual functional

capacity because that is usually the basis for a challenge in these review proceeding.[1] I have also considered whether additional evidence that she submitted to this Court with her complaint might require remand.

3. There is clearly substantial evidence upon which the ALJ relied to show that despite her physical impairments, plaintiff could do restricted sedentary work. The ALJ placed primary reliance on the opinion of consultative internist Dr. Silvia Aguiar. Dr. Aguiar's musculoskeletal examination resulted in her findings of a full range of motion and strength in all of plaintiff's joints, noting only some tenderness and swelling in her right ankle and that she walked with a non-painful limp. In other words, it was very close to normal. Every observation of her back, arms, and legs resulted in no positive findings. In fact, it is hard to see how Dr. Aguiar found that plaintiff had marked limitations in prolonged standing or walking. There is little in her medical findings that supports that restriction, except perhaps that plaintiff could not walk on her heels or toes or do more than a 1/4 squat.

4. The ALJ also relied on the non-medical evidence of plaintiff's activities of daily living. Although there was some contradictory evidence, the ALJ was entitled to conclude that plaintiff was able to self-care, care for her two children, prepare meals, perform household chores, shop, and travel independently on public transportation. The ability to handle the stairways of the New York City subway system is consistent with the ability to do some level of sedentary work.

5. There was some other evidence that could be construed as pointing towards a physical disability, but all it did was confirm the existence of the severe impairments that the

---

[1] The ALJ offered a reasonably detailed analysis of why plaintiff did not meet any of the Listing of Impairments. Having reviewed the record, I am not addressing a potential counter-argument because it is not viable. The record is clear that plaintiff did not meet a Listing.

2

ALJ found.  None of that evidence addressed the functional capacity that plaintiff retained notwithstanding her severe physical impairments.

6. There was also substantial evidence that plaintiff's major depressive disorder would not prevent her from performing sedentary work with the restrictions imposed by the ALJ. This consisted mostly of an examination and evaluation by a consultative psychologist, Dr. Christopher Flach.  To summarize his opinion, it suffices to note his conclusion that "the results of the examination appear consistent with psychiatric problems but in themselves do not seem to significantly interfere with the claimant's ability to function on a daily basis."  This conclusion was solidly supported by Dr. Flach's specific observations, and the ALJ was entitled to find it persuasive.

7. In contrast to this, one of plaintiff's social workers, Toneakqua Cardona of the Jewish Board (a social service agency), opined in two letters and a questionnaire in September and October 2019 (collectively, the "Cardona submissions") that plaintiff was "unable to meet competitive standards" in interacting with the general public, and that she had "no useful ability" to perform at a consistent pace without rest periods too frequent for any workplace.  Other specific functional assessments in the Cardona letters, which need not be detailed here, assessed plaintiff as utterly unable to function in the workplace.  Acceptance of this opinion would have required a finding of disability, but the ALJ found the Cardona letters unpersuasive because they were "too-restrictive and [] not consistent or supported by treatment records or consultative examination findings, which reflect that the claimant's cognitive skills were only mildly impaired and that she retained intact thought processes, social skills, and the ability to independently perform her activities of daily living."  The ALJ was justified in making this

finding about the Cardona submissions. There were no treatment records at all and no other basis by which the ALJ could assess their conclusions against the record.

8. Despite the regulatory repeal of the treating physician rule, it is often the case that the opinion of a treating psychologist will receive more than a consultative opinion because the treater will probably know the claimant a lot better than the consultant who conducts a one-time examination. But that is not the case here. Her social worker saw little, if any, more of her than Dr. Flach.

9. The Cardona submissions, prepared shortly before the hearing, asserted that plaintiff had been receiving "weekly individual psychotherapy sessions since August 28, 2019," and that her next evaluation would be on October 23, 2019 (after the hearing). Beyond this assertion, there is no indication in the record of weekly individual psychotherapy sessions. Rather, the record reflects that the only contact plaintiff had with the social service agency supplying her counseling was to fill out an intake questionnaire in June 2019; and then have appointments on August 28 and October 23. That was quite late in the process, especially considering that plaintiff was claiming a disability onset date in late 2017, and that she received notice of the hearing before the ALJ prior to July 30, 2019. Yet this is the only indication in the record that plaintiff had ever, in her entire life, sought any help with her alleged mental impairment. And there is no reason to think that plaintiff's social worker or social service agency submitted less than all the records they had about plaintiff.

10. Under these circumstances, the ALJ was entitled if not obligated to discount the very restrictive opinion of plaintiff's social worker.

11. The only viable issue on this record arises from additional evidence annexed to plaintiff's complaint in the present proceeding, and thus is evidence that neither the ALJ nor the Appeals Council ever saw. That evidence consists of:

- A "To Whom It May Concern" letter, one paragraph, from plaintiff's physical therapist, Larry Codner, dated November 13, 2020 (the "Codner letter");
- A "Multiple Impairment Questionnaire" from Angela Kwok, one of plaintiff's Jewish Board social workers, dated November 23, 2020 (the "Kwok questionnaire");
- A "Lower Extremities Impairment Questionnaire" from a certified physician's assistant, Francis Albano, also dated November 23, 2020 ("Albano questionnaire"); and
- A second "Multiple Impairment Questionnaire", this one from a Psychiatric Nurse Practitioner, Jennifer Furst, of the Madeline Borg Staten Island Counseling Center (an affiliate of the Jewish Board), dated November 24, 2020 (the "Furst questionnaire").

12. In addition, the record contains an intake form from Nurse Practitioner Furst based on a televideo session held on October 23, 2019 (the "Furst televideo report"). It is not clear whether the ALJ was aware of this evidence. Although it is included in the record, plaintiff's session occurred six days after the hearing before the ALJ on October 17, 2019, and the ALJ did not mention this intake form in her decision on February 26, 2020. Because the ALJ did not mention it, I am reviewing it as evidence submitted for the first time.

13. When a district court is asked to consider evidence not previously submitted before the ALJ or the Appeals Council, the evidence must meet certain criteria. See Tirado v. Bowen, 842 F.2d 595 (2d Cir. 1988). One of these criterion is that the evidence cannot be cumulative of other evidence already in the record – that is, it must be "new." Some of this additional evidence that plaintiff has submitted does not meet this criteria when measured against the Cardona letters. That is the case with the Kwok questionnaire. It merely reiterates the conclusions in the Cardona submissions, albeit in somewhat different terminology. More importantly, it does not cure the deficiencies that the ALJ found with the Cardona submissions.

5

There are no treatment records to back it up. This not only robs it of any probative value, but it leaves the impression that plaintiff's well-meaning social workers were willing to write down whatever might be necessary to help get benefits. Although the two Furst documents are new, there is also nothing to back them up.

14. Further, later-submitted records that postdate the relevant time period are not properly considered. "[E]vidence demonstrating a worsening of [the plaintiff's] condition after [the relevant] date is of little value." Vilardi v. Astrue, 447 F. App'x 271, 272 (2d Cir. 2012). Therefore, the remainder of the materials that plaintiff has submitted, including the Codner letter and Albano questionnaire, supporting the contention that her medical status has worsened since the Commissioner's decision to deny her Social Security disability benefits, are not properly considered. Thus, I conclude that the additional evidence that plaintiff has submitted with her complaint do not meet the standard for remanding the case for another hearing.

15. However, I will note that plaintiff, based on her allegedly deteriorating condition, may reapply for disability benefits. See Delvalle v. Colvin, No. 14-cv-1779, 2015 WL 1381536, at *3 (S.D.N.Y. Mar. 25, 2015); Velasquez v. Barnhart, No. 03-cv-6448, 2004 WL 1752825, at *4 (S.D.N.Y. Aug. 4, 2004) ("If [plaintiff]'s condition has indeed worsened since the ALJ issued his opinion . . . she is encouraged to reapply for benefits." ); Ryles v. Sec'y of Health & Human Servs., 526 F. Supp. 1141, 1143 (E.D.N.Y.1981) ("[I]f a claimant's physical condition should deteriorate after a claim has been denied, the proper procedure is to reapply for disability benefits based upon the facts as they then exist.").

16. Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and the case is dismissed.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
      June 27, 2022